**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

DEONTEA JAMAR WHITE,

        Petitioner,

v.                                                                                              Case No. 21-12899

MATT MACAULEY,

        Respondent.
_____/

**OPINION AND ORDER GRANTING PETITIONER'S MOTION FOR EXTENSION, DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner Deontea Jamar White, incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In his *pro se* application, Petitioner challenges his conviction for first-degree felony murder,[2] two counts of armed robbery,[3] assault with intent to do great bodily harm less than murder,[4] receiving and concealing stolen property valued between $1,000.00 and $ 20,000.00,[5] and felony-firearm.[6] For the reasons that follow, his petition will be denied with prejudice.

---

[1]     Petitioner also filed a "Motion to Accept Late Filing of Reply Brief" (ECF No. 13) and requests the court to consider his additional briefing. The motion will be granted.
[2]     Mich. Comp. Laws § 750.316(1)(b).
[3]     Mich. Comp. Laws § 750.529.
[4]     Mich. Comp. Laws § 750.84.
[5]     Mich. Comp. Laws § 750.535(3)(a).
[6]     Mich. Comp. Laws § 750.227b.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. The court recites verbatim the Michigan Court of Appeals' factual summary of the case, since it is presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's convictions arise from two robberies that occurred in the city of Detroit on May 6, 2016. Etoh Walker and Aaron Foster were walking in the area of Packard and Savage streets when a dark colored Dodge Intrepid pulled up. Two of the three men inside jumped out of the car with weapons. A gunman pointed a semiautomatic weapon at Walker's face and took $10 from him before returning to the car. Walker observed defendant point an AK-47 rifle at Foster, and Foster turned over his sneakers and belt to defendant. Defendant returned to the car with Foster's belongings. As Foster and Walker ran, defendant shot Foster in the back, killing him.
>
> Shortly thereafter, Kyle Upshaw was in front of his home on Meade Street cleaning his car. Suddenly, defendant and a second gunman exited a blue Intrepid, ran up to Upshaw, pointed their guns at him, and demanded money. Upshaw yelled back that he did not have money or anything else on his person. Daniel Claxton, Upshaw's brother, was in the home and heard the yelling. He looked out and saw Upshaw held at gunpoint by defendant, who was armed with an AK-47 assault rifle, and a second gunman. Claxton stepped out onto the porch and began to fire his own weapon toward the gunmen who returned fire. Defendant shot Claxton, and he dropped his weapon and went into the home to retrieve another weapon. Upshaw had a weapon on his person and also fired at his assailants. Defendant and the second gunman returned to their car and were driven from the scene. From inside, Claxton saw the men get into a purple Stratus, but he later testified it may have been a "purple-blue" Intrepid.
>
> Upshaw found Claxton in the home and drove him to the nearest hospital. After Claxton was taken to surgery, Upshaw was walking with a police officer when he saw a man[7] sitting on top of a blue Intrepid with some windows shot out, and the doors had multiple bullet holes. The ignition of the vehicle was damaged, and it was reported as stolen. Apparently,

---

[7] The driver was identified as Joshua Stewart. Defendant and Stewart were tried together, but by separate juries. Stewart's convictions are not at issue in this appeal. (Footnote in original.)

2

Claxton had shot defendant in the torso, and the driver took defendant to the same hospital for medical treatment. Although the driver asserted that he merely came upon defendant who was shot and drove him to the hospital, defendant claimed that he was with the driver and a third man when their vehicle was fired upon. However, Foster's shoes and belt were found in the stolen car.

Although Walker, Upshaw, and Claxton gave different descriptions of defendant's hairstyle, they all identified him as the shooter with the AK-47. The men also gave different descriptions of the make, model, and color of the car used by the robbers. Additionally, a shell casing recovered from the scene of Foster's shooting was fired from the same gun as shell casings found at the shooting scene between defendant, the second gunman, Claxton, and Upshaw. Defendant did not testify at trial, but raised the theory of misidentification. Specifically, he challenged the witnesses' inability to agree on the make, model, and color of the vehicle used in the shooting as well as their various descriptions of defendant's hairstyle as dreadlocks, braids, and cornrows when he wore an afro. Despite the defense theory, the jury convicted defendant as charged.

*People v. White*, No. 337623, 2020 WL 1968242, at *1-2 (Mich. Ct. App. Apr. 23, 2020), *leave to appeal denied*, 947 N.W.2d 819 (Mich. 2020).

Petitioner, in his habeas petition, raises the following issues:

A. Whether Petitioner was denied his Sixth Amendment and Fourteenth Amendment rights to a fair trial and due process of the law through prosecutorial misconduct, i.e., unfair personal attacks on Petitioner or improper remarks during closing argument? Further, whether trial counsel rendered effective assistance under the Sixth Amendment despite trial counsel's failure to object to the prosecutor's allegedly improper argument?

B. Whether the trial court reversibly erred by allowing the prosecution to present ballistics evidence at trial that stemmed from a report that was turned over to defense counsel shortly before trial and in violation of the discovery time requirements under the Michigan Court Rules, thereby depriving White of his (1) Sixth Amendment right to confrontation; (2) Sixth Amendment right to the effective assistance of counsel; and (3) Fifth and Fourteenth Amendment rights to present a

3

full defense and due process and comparable state constitutional rights under Mich. Const. 1963, Art. 1, §§ 17, 20?[8]

## II. STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court either (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or (2) decides a case differently than the Supreme Court has on a "set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

---

[8] Due to the brevity of the petition for writ of habeas corpus, the court is willing to incorporate the arguments raised in Petitioner's state appellate court brief as part of Petitioner's application for writ of habeas corpus. (*See* ECF No. 11-14, PageID.771-794). *See Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n.2 (E.D. Mich. 2004).

4

federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner's first claim alleging prosecutorial misconduct was reviewed and rejected under a plain error standard because Petitioner failed to preserve the issue at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).[9]

### III. DISCUSSION

#### A. Prosecutorial Misconduct & Ineffective Assistance of Counsel

Petitioner first argues that he was denied a fair trial because of prosecutorial misconduct. Petitioner alternatively argues that counsel was ineffective for failing to object to the alleged misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v.*

---

9     Respondent argues that the claim is procedurally defaulted. Petitioner argues in the alternative in his first claim that counsel was ineffective for failing to object to the alleged prosecutorial misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

*Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

>The Michigan Court of Appeals rejected Petitioner's claim:
>
>Defendant contends that the prosecutor improperly commented during closing argument that (1) defendant is a "robber" and that is "what he does" and (2) defendant "has no heart, he has no soul." The prosecutor's comment that defendant is a robber was not improper, but a fair comment on the evidence. Defendant was driving in a stolen vehicle with two other individuals, and he carried an AK-47 with him. They engaged in the robbery of Foster and Walker. A short time later, they attempted to rob Upshaw. Thus, the prosecutor's comment that defendant was a robber and that was "what he does," was not improper. Defendant failed to demonstrate plain error from the prosecutor's characterization of defendant's activity and his express use of the term "robber," particularly where defendant was charged with armed robbery.
>
>Even if we assume that the prosecutor's argument that defendant had no heart or soul was improper, he is not entitled to appellate relief. A timely objection to the challenged remark could have cured any potential prejudice through a cautionary instruction. Jurors are presumed to follow their instructions, and jury instructions are sufficient to dispel any possible prejudice. Even in the absence of a defense objection, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury's verdict must be based solely on the properly admitted evidence, and that the court's instructions must be followed. Under the circumstances, defendant failed to establish that this isolated remark affected his substantial rights.

6

*White*, 2020 WL 1968242, at *3 (internal citations omitted). The Michigan Court of Appeals' decision was reasonable, precluding habeas relief.

With respect to the prosecutor's remarks that Petitioner was "a robber" and that' is "what he does," there was nothing improper about these remarks because they were based on evidence establishing that Petitioner committed several robberies on the day in question. The level of planning for both robberies also suggests that Petitioner had committed armed robberies before. Courts have repeatedly denied habeas relief for such remarks, particularly where they are a fair comment on the evidence. *See Blackston v. Rapelje*, 907 F. Supp. 2d 878, 901-02 (E.D. Mich. 2012) (finding that the prosecutor's comment during opening statement in murder prosecution that he did not mean to paint a witness "as anything other than a cold-blooded murderer" just like the petitioner, "because that's what they are," did not entitle petitioner to habeas relief on his prosecutorial misconduct claim), *aff'd*, 769 F.3d 411 (6th Cir. 2014), *opinion amended and superseded*, 780 F.3d 340 (6th Cir. 2015); *Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (holding the prosecutor's comments during closing argument that the defendant was a murderer and artful liar, while questionable, "were essentially a commentary on the credibility issue" before the jury and did not rise to the level of a constitutional violation); *Sanchez v. Sec'y, Dep't of Corr.*, 814 F. App'x 520, 521-22 (11th Cir. 2020) (prosecutor's references to defendant in trial for armed sexual battery as an "armed kidnapper," "rapist," "armed robber," and "armed burglar" were not improper under Florida law and did not entitle petitioner to habeas relief, particularly where prosecutor in closing argument was advocating for a conclusion that could be reached from the evidence and charges).

7

The same principle applies to the prosecutor's remarks that Petitioner "has no heart, he has no soul." In context, this comment was arguably based on reasonable inferences drawn from the evidence which showed that Petitioner shot Mr. Foster in the back during the victim's attempt to flee, despite the fact that he had already surrendered his belt and shoes to Petitioner upon demand for his property. (ECF No. 11-11, PageID.641-44.) The Sixth Circuit has denied habeas relief for similar remarks. *See Smith v. Mitchell*, 348 F.3d 177, 212 (6th Cir. 2003) (holding that the prosecutor's comments—describing a murder as "cold and calculating," stating that defendant had robbed victim while blood was spurting out her neck, and indicating that defendant got up the next morning and celebrated—represented reasonable inferences that could be drawn from evidence and did not render the trial fundamentally unfair); *cf. Cunningham v. Shoop,* 23 F.4th 636, 677 (6th Cir. 2022) (citing *Hartman v. Bagley*, 492 F.3d 347, 367 (6th Cir. 2007)) (denying habeas relief where the prosecutor attempted to inflame the jury's passion through comment that the killing was "absolutely the most cold-blooded calculated inhumane murder that anyone could ever imagine," and holding that the state court did not unreasonably apply Supreme Court precedent in deciding that the statement was ultimately harmless).

In any event, any potential prejudice from the prosecutor's remarks in Petitioner's case was ameliorated by the judge's instruction to the jurors that the attorneys' arguments, questions, and statements were not evidence. *See Byrd v. Collins*, 209 F. 3d 486, 533 (6th Cir. 2000). Indeed, as noted by the Michigan Court of Appeals, the trial court repeatedly instructed the jury that its verdict must be based solely on properly

8

admitted evidence. (ECF No. 11-12, PageID.676-77.) Petitioner is not entitled to relief on his prosecutorial misconduct claim.

Relatedly, Petitioner also argues that counsel was ineffective for failing to object to the alleged misconduct. To prevail on his associated ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). The Supreme Court in *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that, but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Even if Petitioner demonstrated that his counsel's performance was deficient, the prosecutor's comments did not deprive Petitioner of a fundamentally fair trial—Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006). Thus, Petitioner is not entitled to relief on either his prosecutorial misconduct or related ineffective assistance of counsel claim.

### B. Discovery Violation

Petitioner next contends that the trial court erred by denying his request to bar the admission of the ballistics evidence report from trial. The basis of Petitioner's claim

9

is that the prosecutor violated the rules of discovery by failing to turn the report over to defense counsel in a timely manner.

The Michigan Court of Appeals set forth Michigan's applicable standard and rejected the claim:

> MCR 6.201(A)(3) provides that a party must provide the report for an expert whom the party intends to call at trial. When a discovery violation occurs, the trial court must exercise discretion to fashion an appropriate remedy for the violation which balances "the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for the noncompliance." *People v. Banks*, 249 Mich. App. 247, 252; 642 N.W.2d 351 (2002). MCR 6.201 does not require exclusion of evidence as a remedy for a discovery violation. Rather, MCR 6.201(J) delineates examples of possible remedies for a discovery violation, including a continuance. Additionally, to be entitled to relief for a discovery violation, the defendant must establish actual prejudice. *People v. Rose*, 289 Mich. App. 499, 525-526; 808 N.W.2d 301 (2010).
>
> In the present case, defense counsel argued that the ballistics report was untimely because of the dates within the report regarding the testing. However, the prosecutor argued that the complete *analysis* was not submitted to the prosecutor until four days before trial, and he immediately forwarded the report to the defense. The defense did not contest this assertion. Furthermore, the defense did not seek an alternate remedy, such as a continuance, to allow time to review the report or obtain a contrary opinion. Rather, the report was disclosed to the defense four days before trial, and the evidence was not admitted until the fourth day of trial. After the trial court's ruling denying the request to exclude the report, the defense did not revisit the issue to request additional time to contest the findings of the report. Finally, defendant failed to demonstrate actual prejudice as a result of the trial court's ruling. *Rose*, 289 Mich. App. at 525-526. The defense theory of the case was that defendant was misidentified as the shooter as evidenced by the inconsistent descriptions of the perpetrator and the vehicle. Thus, the ballistics report did not bear on the defense of the charges.
>
> In sum, the trial court did not abuse its discretion by ruling that the production of the ballistic report shortly before trial was not grounds to exclude the report from trial, and defendant failed to establish actual prejudice from its late production.

*People v. White*, 2020 WL 1968242, at * 4 (emphasis original).

"It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)); *accord United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002); *Presser*, 844 F.2d at 1281; *see also Friday v. Straub,* 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Thus, the trial judge's failure to exclude the ballistics report from evidence because of an alleged discovery violation by the prosecutor does not entitle Petitioner to habeas relief. This is particularly true where, as noted by the Michigan Court of Appeals, the ballistics evidence had no bearing on Petitioner's defense that he was misidentified as the shooter by "inconsistent descriptions of the perpetrator and the vehicle"; thus, to the extent Petitioner claims that this rendered his trial fundamentally unfair in violation of his due process rights (ECF No. 12, PageID.873), the record does not support such an argument. *See, e.g., Burns*, 328 F. Supp. 2d at 723 (holding that petitioner was not entitled to habeas relief on claim that the trial court abused its discretion in failing to exclude evidence and testimony or dismiss the charges when the prosecutor failed to comply with the discovery order).

### C. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the

11

merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a "threshold inquiry" into the underlying merits of the claim. *Id.* at 336-37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, Petitioner is not entitled to habeas relief. Accordingly,

IT IS ORDERED that Petitioner's "Motion to Accept Late Filing of Reply Brief" (ECF No. 13) is GRANTED.

IT IS FURTHER ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" (ECF No. 1) is DENIED.

Finally, IT IS ORDERED that a Certificate of Appealability is DENIED.


                                           s/Robert H. Cleland              /
                                           ROBERT H. CLELAND
                                           UNITED STATES DISTRICT JUDGE

Dated: June 23, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 23, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                               /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-12899.WHITE.DenyingHabeasAndCOA.DHB.MAZ.docx